RABALAIS v. ORLEANS-KENNER TRACTION CO., INC., ET AL.

(April 29, 1929. Opinion and Decree.)

E. L. Bordelon, of New Orleans, attorney for plaintiffs, appellees.

Milling, Godchaux, Saal and Milling, and C. A. Buchler, of New Orleans, attorneys for defendants, appellants.

JANVIER, J.  Plaintiff was injured while a passenger in one of the electric cars of defendant, Orleans-Kenner Traction Co., Inc.  The car was struck by a train of the Louisiana Railway & Navigation Company on the crossing of the tracks of the two companies in the Parish of Jefferson, just above the corporate limits of the city of New Orleans.  A few minutes before the accident the car in which plaintiff was a passenger had been brought to a stop some twenty or thirty feet before crossing the track of the Louisiana Railway & Navigation Company, because there was on that track, and extending over the crossing, a train composed of a locomotive and tender and eighteen freight cars.  This train was standing still at the time the street car was brought to a stop, and all but the last three cars had already passed over the tracks of the traction company.

The electric car was forced to wait for about eight minutes, during which time the locomotive of the train switched certain freight cars to and from the industrial tracks of an industry located nearby.

After completing the switching, the locomotive was again attached to the remaining freight cars—fifteen in number—and then, at a very slow speed, pulled the train forward so that the three cars which had theretofore blocked the crossing of the street car track, passed across the tracks of the traction company and cleared the way for the street car.  Thereupon the motorman put on his power and proceeded on his way to cross the railroad track. When the car had reached a point at which its middle section was about on the crossing the train, which in the meantime had stopped only a few feet after clearing the

crossing, rolled slowly backwards and the rear car, an oil tank car, crushed into the side of the electric car just behind its middle section. The impact caused that side of the street car to be lifted slightly from the rails, though, fortunately, it did not turn it over, and plaintiff was injured either by being thrown to the other side of the car or by rushing over there in her fright.

Suit was brought against both companies and it is sought to hold them solidarily liable for the injuries and losses sustained. Judgment against the Louisiana Railway & Navigation Company was rendered for $1,500, but the Orleans-Kenner Traction Company, Inc., was held not liable and Judgment dismissing the suit as to it was rendered.

The railroad company, contending that it should not be held liable, claims that the accident was unavoidable, and resulted from events over which it had no control. Its explanation of the accident is that, after its train had proceeded to a point at which the last car had cleared the crossing by a few feet, the train, which was nearly six hundred feet in length, was stopped suddenly because, about six hundred twenty feet beyond the crossing there was a safety derail, which was set against the train. It is contended that, as a result of this stop, the air brakes on the train not being connected, the slack in the various draw bars of the cars was compressed and this allowed the last car to clear the crossing, but that, after the stop was made, the slack in the draw bars released itself, with the result that the length of the train was extended about eight feet and that, as a result, the last car rolled slowly backwards to the track which it had just crossed and thus crushed into the side of the standing street car.

Plaintiff stoutly maintains that the whole train was backed deliberately by the engineer. It is claimed that the train had gone a few feet farther than was intended, with the result that the engine and tender, when brought to a stop, were standing over the mechanism which operates the derail and that, when the engineer realized that this would prevent the derail from operating he backed up so as to clear this derail so that it might be allowed to operate, and his train permitted to proceed.

It will thus be seen that there is no doubt that the unfortunate accident resulted from the backward movement of the last car of the train, whether the backward movement was caused deliberately and intentionally by the engineer, or whether it was the inescapable result of stopping the train suddenly when its rear end yet remained so near to the crossing. It seems to us that, whichever is the case, the result is chargeable to those in charge of the train unless it can be shown that the stopping of the train was caused by something beyond their control, and of which they had no prior knowledge.

The evidence shows that the distance from the crossing to the derail was just sufficient to permit of the train being stopped between these two points and it also shows that there is in the draw bar on each end of each car, a large, powerful spring, which allows for a play of about three or four inches. It thus appears that in a train of that length there is a total play, or "take-up" in the draw bars of about eight feet. If all the draw bars are compressed, the total length of the train is about eight feet shorter than if they are all extended.

The derail to which we have referred is a small piece of iron, possibly two feet long,

about six inches wide and three or four inches high, which is so arranged that it can be raised and placed upon the rail or removed therefrom by a switchman located in the tower-house some distance away. Its purpose is to prevent collisions between the trains of the defendant railroad company and those of the Illinois Central Railroad Company, the tracks of which companies cross each other only a short distance beyond the scene of the accident with which we are now concerned.

At the time of the commencement of the forward movement of the train this derail was set against it, and the signal board so indicated, so that the engineer knew that he could not cross over it without derailing his train and that, unless it were removed before his locomotive reached it, he would have to again bring his train to a stop. It appears to us that the engineer, realizing that his train had already blocked the crossing longer than was justified, determined to clear the crossing if possible. He must have known the approximate length of his train and he must have realized that it would occupy practically all of the available track between the crossing and the derail, because, if he had not realized this, it is certain that he would not have pulled his train so near to the derail as to. prevent its operation.

Knowing these facts, and being charged with knowledge of the fact that his train would, on being stopped, extend itself as a result of the draw bar extension to which we have already referred and would thus come dangerously near to the street car, which must nesessarily cross behind its train, it would appear that this engineer and those in charge of the train were negligent in not making certain that there was suffiicent room to allow for the stopping of the train and for the additional

length thereof which would result from the draw bar extension.

We find a most enlightening decision in Bell J. Augustus vs. Chicago, Rock Island & Pacific Ry. Co. et al., 153 Mo. App. 572, 134 S. W. 22. The facts in that case are remarkably similar to those here, and on the point which we are now discussing the court said:

"The trainmen should have realized that persons using the street might be misled by the movement of the train away from the crossing into the supposition that it was being pulled away by the engine and would not return immediately. The fact that the movement was caused by the taking up of slack was peculiarly within the knowledge of the trainmen, and, in the exercise of reasonable care, they should not have stopped at a place where the train would 'kick' back and strike an unwary traveler who might be in its path."

We can well understand that it would not constitute negligence to stop a train so soon after going over a crossing if the stop were made necessary by an unforeseen emergency, or by some condition of which the engineer had no prior knowledge. Here, however, he knew quite well that the derail was set against him and that, unless it were removed within the few moments or seconds required for him to go only about 125 or 150 feet, he would have to bring his train to a sudden stop. In fact, it might reasonably be said that he knew when he started his train, almost to a certainty, that he would have to stop immediately after clearing the track.

It would thus appear that, even conceding that the back movement was not made deliberately or intentionally, and that the engine itself did not move backwards at all, still, what happened should have been within the knowledge of an experienced railroad crew, and they should have fore-

seen that just such a thing would occur. Having this knowledge, the accident is chargeable to their negligence.

Of course, if the movement was made deliberately there can be no doubt that the defendant railroad company should be held responsible therefor.

Some attempt was made to show that when the crossing was clear the motorman of the street car was warned not to go across the track, but we are of the opinion that the evidence falls far short of showing that a warning, such as the danger of the situation required, was actually given.

We are told, in argument, that it is not negligence to operate a train in a switching movement without a substantial number of the cars having their air brakes connected. We realize that the federal authorities do not require that trains operated in switching movements must have air lines connected, but we believe that where trains are operated in this fashion, even within railroad yards and in switching operations, the operators are bound to take unusual precautions and that, while such acts as failure to connect air lines may not constitute negligence per se, if, as a result of such failure, accidents happen which would not otherwise have occurred, the railroad companies should be held responsible. Here it is certain that if the air brakes had been working, the train would not have rolled backwards as it did. That the brakes were not connected was well known to the crew of the train, but not to the crew of the street car. When the crew of the street car saw the train clear its track, they were justified in assuming that it would not immediately return either intentionally or otherwise.

Counsel for the railroad company contends that the reasoning in the opinion of Augustus vs. Chicago, Rock Island & Pac, Ry., supra, in which the street railway was likewise held negligent, is so logical that it is unanswerable. We quite agree with him. But we find in that case one important fact which, in our minds, distinguishes it from the case at bar, and that fact is, as found by the court: "The flagman signalled the motorman to stop and remain where he was when his car was in a place of safety and the motorman disobeyed that signal in proceeding to cross."

If we felt that a proper warning had been given to the crew of the car and that that warning had been carelessly or deliberately disregarded, we would of course be unable to hold the railroad company liable and would certainly fasten responsibility on the traction company, but, as we have already stated, we do not believe that such warning was given.

So far as the Orleans-Kenner Traction Company is concerned, it seems to us that their employes were justified in proceeding across the track as soon as the train had cleared it a sufficient distance to lead them to believe it was safe to cross. They had not the knowledge, which was in the possession of the engineer of the train, that the derail was set against the train, and that it must therefore come to a sudden stop, nor did they know that the train brakes were not connected and that, therefore, if it did come to a sudden stop, the spring expansion in the draw bars would force the rear end of it to roll back upon them.

For these reasons we are of the opinion that the findings of the lower court, to the effect that the railroad company should be held liable and that the suit as against the traction company should be dismissed, was correct.

The trial court allowed plaintiff $1,500. Plaintiff's injuries consisted principally of bruises and external injuries to her chest and legs. They do not seem to be permanent. She was confined to her bed for three weeks and for about six months could not follow her usual occupation, that of dress-making and sewing. Her physician testified that, as a result of her injuries, she was for a time subjected to spells of nausea, but we do not gather from his evidence that he believes her injuries caused her more than temporary suffering and inconvenience. We believe that the amount allowed by the trial court is out of line with previous awards of this and the Supreme Court and should be reduced to $1,000.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is amended by reducing the amount thereof to one thousand dollars ($1,000) and, as thus amended, affirmed.